UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| BRENDA SATTERWHITE, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Case No. 1:06-cv-165 |
| v. ) | Judge Mattice |
| ) | |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY, *et al.*, ) | |
| ) | |
|     Defendants. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Brenda Satterwhite brought this action against Defendants Metropolitan Life Insurance Company, the Long Term Disability Plan for Employees of the U.S. Enrichment Corporation, and the United States Enrichment Corp. Plaintiff's initial Complaint alleged a cause of action under 29 U.S.C. § 1132(a)(1)(B) and sought judicial review of a termination of long-term disability ("LTD") insurance benefits, which took effect as of August 31, 2005. [Court Doc. 1, Compl.] Upon review of Defendants' decision, the Court remanded Plaintiff's claim back to Defendants for a full review of the record. [Court Doc. 20, Mem. and Order.] On remand, Defendants approved Plaintiff's benefits through January 16, 2006 but found that she was not disabled as of January 17, 2006. Plaintiff moved for this case to be reopened for judicial review of Defendants' new decision. [Court Doc. 35.]

Before the Court is Plaintiff's Second Motion for Judgment on the Pleadings [Court Doc. 44]. Pursuant to 28 U.S.C. § 636(b)(1), the Court referred this matter to United States Magistrate Judge William B. Mitchell Carter for a Report and Recommendation ("R&R") on Plaintiff's motion. Magistrate Judge Carter entered his R&R [Court Doc. 53] on February

19, 2011. Magistrate Judge Carter determined that Defendants did not adequately review the record on remand pursuant to the Court's prior Order and concluded that Defendants' new decision was arbitrary and capricious. Accordingly, Magistrate Judge Carter recommended that Plaintiff's Motion be granted and disability benefits be awarded. Defendants filed a timely objection [Court Doc. 55] and Plaintiff timely responded [Court Doc. 56].

Based on the timeliness of Defendants' Objection, the Court **DENIES AS MOOT** Defendants' Unopposed Motion for Entry of an Order Extending Time to Respond to Report and Recommendation [Court Doc. 54].

For the reasons explained below, the Court will **ACCEPT AND ADOPT** Magistrate Judge Carter's Report and Recommendation [Court Doc. 53] and Plaintiff's Second Motion for Judgment on the Pleadings [Court Doc. 44] will be **GRANTED**.

I.  **STANDARD OF REVIEW**

The Court must conduct a *de novo* review of those portions of the R&R to which an objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). For those portions of the R&R to which objections have been filed, the Court will directly review the decision-making process underlying the Defendant's denial of benefits.

A claim under 29 U.S.C. § 1132(a)(1)(B) for denial benefits is to be reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the administrator or fiduciary

is afforded discretion by the plan, the decision is reviewed under the arbitrary and capricious standard. *Evans v. Unum Provident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). The Plan documents here assert that the Plan Administrator has discretion to interpret Plan terms. (Administrative Record Plan Documents ("Plan") at 215.) This Court will therefore conduct its review under the arbitrary and capricious standard.

Under 29 U.S.C. §1132(a)(1)(B), a court's review is limited to the administrative record as it existed when the plan administrator made its final decision. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378-79 (6th Cir. 2005). Arbitrary and capricious is one of the least demanding forms of review. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). "Nevertheless, merely because our review must be deferential does not mean our review must also be inconsequential." *Id*. A court must "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id*. at 172. If the administrative record does not show that the administrator offered a "reasoned explanation" based on substantial evidence, the decision is arbitrary or capricious. *Moon*, 405 F.3d at 379. Substantial evidence means "much more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McDonald*, 347 F.3d at 171.

## II. FACTS

The Report and Recommendation briefly outlined the applicable facts of the case prior to remand (which are further outlined in the Court's prior Order) and outlined in detail the medical evidence presented to Defendants after remand. The parties have not objected to the facts statement contained in Magistrate Judge Carter's R&R. The Court

finds no error in Magistrate Judge Carter's findings of fact. Accordingly, the Court hereby **ADOPTS BY REFERENCE** the entire background section of the R&R. (Court Doc. 53, R&R at 2-14.)

## III. ANALYSIS

Defendants assert three basic objections. First, Defendants argue that Magistrate Judge Carter misapplied the arbitrary and capricious standard when reviewing Defendants' decision. (Court Doc. 55, Defs.' Objs. at 2.) Second, Defendants argue that Magistrate Judge Carter overlooked or diminished significant facts in the record. (*Id.*) Finally, Defendants contend that Magistrate Judge Carter improperly reversed the burden of proof placed on the parties pursuant to the Plan. (*Id.*) The Court will address the first two objections in concert, as they are closely related, and will then turn to the final objection.

### A. Defendants' Decision to Deny Benefits on Remand

Defendants assert that a decision based on evidence and supported by a reasoned explanation is not arbitrary and capricious, and Defendants' discretion to determine eligibility for benefits mandates that its decision be upheld if it is the result of a deliberate principled reasoning process and is supported by substantial evidence. (Defs.' Objs. at 15-16.) Defendants assert that the decision was supported by substantial evidence and Defendants offered a reasoned explanation, but that Magistrate Judge Carter essentially undertook a *de novo* review of the decision. (*Id.* at 16.) Defendants further argue that Magistrate Judge Carter relied heavily on the report of Dr. Kilpatrick, which recounted a one-time encounter with Plaintiff, and that Magistrate Judge Carter improperly called Plaintiff's 20-month treatment with Dr. Larson a "short" treatment history. (*Id.*) Moreover,

Defendants claim that Magistrate Judge Carter gave little weight to Dr. Larson's high numerical ratings of Plaintiff's status and his treatment notes, which showed improvement in Plaintiff. (*Id.* at 17.) Defendants state that Dr. Kilpatrick's report, in contrast, is of little help to determine Plaintiff's disability status as of January 16, 2006, and that Defendants could properly give little weight to this opinion both for that reason and because Dr. Kilpatrick assessed only Plaintiff's subjective, self-reported complaints and symptoms and did not use any tests with validity scales. (*Id.* at 17-18.)

In the R&R, Magistrate Judge Carter took issue with Defendants' reliance on one statement of Dr. Larson, plaintiff's treating psychiatrist from approximately September 2005 through June 2007. Dr. Larson made a treatment note on January 17, 2006 which reads that "I'm not convinced [Plaintiff] is disabled. She likely could do some type of work." (Administrative Record II ("AR II") at 301.) Magistrate Judge Carter did not interpret the statement as conclusively determining that Plaintiff could work, as Defendants apparently had, and Magistrate Judge Carter further found that Defendants had ignored other parts of Plaintiff's treatment history and had again failed to conduct an independent medical examination ("IME") of Plaintiff to determine her disability status. (R&R at 15-16.) For these reasons, Magistrate Judge Carter concluded that Defendants' decision that Plaintiff was not disabled as of January 16, 2006 was arbitrary and capricious, and thereafter went into greater detail on each issue. (*Id.* at 16.)

Specifically, Magistrate Judge Carter noted that some of the problems the Court identified with Defendants' earlier decision to deny benefits continued to pervade the review on remand. (*Id.*) Magistrate Judge Carter noted that Defendants' failure to credit Plaintiff's subjective statements of her symptoms to Dr. Kilpatrick was a problem the Court

encountered in reviewing Defendants' last decision, and the Court had previously stated in its Order that a psychiatrist must treat a patient's subjective mental symptoms, which are not as easily quantified as physical symptoms that can often be established with objective tests. (*Id.*) Magistrate Judge Carter further found that Defendants' failure to conduct its own IME was unreasonable if Defendants were not prepared to credit Plaintiff's self-reported symptoms. (*Id.* at 16-17.)

Magistrate Judge Carter found that Plaintiff's treatment with Dr. Larson consisted primarily of medication management, and although Dr. Larson noted that Plaintiff was stable and doing well, he also diagnosed her with a new mental problem – obsessive-compulsive disorder – and referred her to a therapist in his office. (R&R at 17.) Magistrate Judge Carter noted that Plaintiff's sessions with therapist Kathy Scott indicated significant anxiety, difficulty leaving the house, obsessive-compulsive hand washing, and intrusive fears. (*Id.* at 17-18.) Magistrate Judge Carter determined that Plaintiff's treatment with Dr. Larson and Ms. Scott was not focused on assessing her ability to return to work, but rather on helping her cope with her life at that time. (*Id.* at 18.) Magistrate Judge Carter faulted Defendants for suggesting in their decision certain tests that Plaintiff should have received because, during Plaintiff's appeal, she continued to substantiate her disability by remaining under the care of a licensed physician, continuing to take her anti-depressant and anti-anxiety medications, and attending therapy sessions at her psychiatrist's suggestion. (*Id.*) In addition, after the case was remanded to Defendants, Plaintiff sought and obtained additional testing to establish her capabilities by submitting to an IME with Dr. Kilpatrick, while Defendants did not. (*Id.*)

Magistrate Judge Carter concluded that the respective indications apparent from Plaintiff's treatment with Dr. Larson and sessions with Ms. Scott did not adequately establish that Plaintiff was functioning at any higher level from January 2006 to March 2008 than was indicated by the results of the IME with Dr. Kilpatrick in March 2008. (*Id.* at 18-19.) Magistrate Judge Carter further concluded that because an IME which would be temporally relevant could not now be completed, and because Defendants continued to fault Plaintiff for not providing objective evidence for a subjective mental condition and for not providing results of specific tests they did not themselves conduct, a remand for another full and fair review of her claim would be futile. (*Id.* at 19.)

The Court finds that Magistrate Judge Carter properly applied the arbitrary and capricious standard and properly reviewed the record to reach his decision that Defendants' new denial of Plaintiff's benefits as of January 16, 2006 was arbitrary and capricious. The Court further finds that due to Defendants' complete inability to correct the errors that pervaded its initial review of Plaintiff's claim and rendered Defendants' first decision arbitrary and capricious, any other outcome would be unacceptable to the Court. Although Defendants may assert that their decision was the result of a full review of the evidence and a deliberate, principled reasoning process, the Court cannot give any credit to this assertion when it considers Defendants' refusal to follow any of the Court's rather specific guidance intended to instruct Defendants' review on remand.

The Court engaged in exhaustive analysis in its prior Order on the issue of whether file review by non-examining, consulting physicians was an appropriate way for Defendants to gather information about Plaintiff's disability. The Court stated as follows:

> While disclaiming any pretensions to medical expertise, ***the***

*Court is persuaded that there may be a significant difference between a non-examining doctor reviewing the file of a patient suffering from a purely physical disability and a psychiatrist attempting to ascertain the severity of a mental illness.*

. . .

Although the Sixth Circuit has not yet directly addressed this issue, it has noted that where "credibility determinations regarding a claimant's medical history and symptomology" are required, reliance on a file-only review "may be inadequate." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 297 (6th Cir. 2005). As the court in *Sheehan* noted, a psychiatrist evaluating a patient's mental health relies heavily on their ability to observe the patient's mannerisms, demeanor, and expressions and therefore inherently involves credibility determinations. Based on this, **the Court concludes that under Sixth Circuit precedent a file-only review may be inadequate in cases involving the patient's mental status.** See *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 297 (6th Cir. 2005). Other district courts in the Sixth Circuit have agreed with this conclusion. *See also Smith v. Bayer Corp.*, 444 F.Supp.2d 856, 873-74 (E.D. Tenn. 2006) (quoting *Sheehan* and discrediting nonexamining psychiatrist report for making conclusory statements and judgment calls about the claimant that would required personal examination); *Soltysiak v. UnumProvident Corp.*, 2006 WL 2884461 (W.D.Mich. 2006) (finding denial of benefits arbitrary and capricious where administrator credited non-examining psychiatrist over treating psychiatrist); *Platt v. Walgreen Income Protection Plan For Store Managers*, 455 F.Supp.2d 734, 745 (M.D.Tenn. 2006) (finding that administrator's consulting doctors "were not free to discredit Plaintiff's subjective complaints of pain or its impact on her physical capacity without a physical examination"). Although not dispositive, **the Court finds MetLife's reliance on Dr. Kessler's file-only review particularly troublesome considering the nature of Satterwhite's disability.**

This case is similar to *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161 (6th Cir. 2003), where the Sixth Circuit held that a plan administrator's decision to revoke long-term disability benefits was arbitrary and capricious. McDonald was originally diagnosed with depression and placed on short-

term disability in 1988. He was later found totally and completely disabled by the Social Security Administration and approved for long-term disability benefits by Western-Southern based on his depression and aggressive personality disorder. Independent medical examiners in 1989 and 1994 confirmed the treating physician's determination that McDonald was completely disabled and unable to work in any position.

In 1996, Western-Southern requested medical information from McDonald to evaluate his continued eligibility for benefits. The administrator felt that some of the information provided by McDonald was inconsistent with a diagnosis of total disability and requested another independent medical examination. Without conducting a personal examination of McDonald, this third independent medical examiner opined that he was fit to return to work. Based on this report, the administrator revoked McDonald's long-term disability benefits.

The Sixth Circuit held that the administrator's decision to revoke benefits based on this file-only medical review was arbitrary and capricious. The court discounted the doctor's opinion because it contradicted objective evidence showing that McDonald's depression had not improved as well as the opinion of McDonald's treating physicians and two prior independent medical examiners. *Id*. at 169-70. The Sixth Circuit also discredited the doctor's conclusory statement that McDonald could return to work without specifying what kind of work McDonald could perform. *Id*. at 171-72. Based on the quantity and quality of the medical evidence in the administrative record as a whole, the *McDonald* court held that the administrator's revocation of benefits was arbitrary and capricious. *Id*. at 172.

Satterwhite argues that MetLife's failure to conduct an Independent Medical Examination (IME) shows that its review of Satterwhite's file was not thorough. (Pl. Br. 17.) Discussing a plan's refusal to obtain an IME, **the Sixth Circuit recently stated that "[a]lthough we continue to believe that plans generally are not obligated to order additional tests . . . plans can assist themselves, claimants, and the courts by helping to produce evidence sufficient to support reasoned, principled benefits determinations."** *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006). *See also Smith v. Continental Casualty Co.*, 450 F.3d 253, 264

> (6th Cir. 2006) (holding that administrator's decision not to perform an independent medical examination "supports the finding that their determination was arbitrary.") ***This is especially true when the only medical evidence contradicting the treating physician comes from a non-examining consultant.*** See Hoover v. Provident Life and Accident Ins. Co., 290 F.3d 801, 809 (6th Cir. 2002) (finding that evidence in the administrative record did not support the revocation of benefits because the only doctors that disagreed with the treating physicians were non-examining consultants hired by the insurance company).
>
> The record shows that MetLife considered getting an Independent Medical Examination for Satterwhite. (A.R. 11-13.) ***The Court finds compelling the fact that MetLife declined to obtain an IME, particularly considering its initial denial was based on a lack of information.*** See Platt v. Walgreen Income Protection Plan for Store Managers, 455 F.Supp.2d 734, 746 (M.D. Tenn. 2006) (administrator argued that it was justified in discrediting treating physician's diagnosis because treating physician had not provided adequate objective test results to support diagnosis and court rejected that argument, finding it "strange" that an administrator would rely on lack of evidence to deny claim but had declined to obtain an IME). ***The Court finds MetLife's reliance on a file-only review when it considered obtaining an IME to be a factor which militates in favor of a determination that MetLife's revocation was not the product of a deliberate, principled reasoning process.*** Smith v. Continental Casualty Co., 450 F.3d 253, 264 (6th Cir. 2006) (holding that an administrator's decision not to perform an IME "supports the finding that their determination was arbitrary.")

(Court Doc. 20, Mem. and Order at 22-26 (emphasis added).)

The Court devoted over *seven* pages to this issue and made it abundantly clear that Defendants' failure to obtain an opinion from an examining psychiatrist through an IME – rather than a file review – was a "compelling" factor in its determination that Defendants' denial of benefits was arbitrary and capricious, particularly in light of the fact that Defendants claimed they did not have enough information to evaluate Plaintiff's disability.

-10-

On remand, however, Defendants did not obtain an IME, and instead had Plaintiff's file reviewed by no less than four non-examining, consulting physicians. The Court did not advise Defendants that file review by *more* physicians would be adequate in this case and, indeed, it is a mystery to the Court why Defendants had two internal medicine physicians review Plaintiff's file, as the Court is quite unaware of any disability claims Plaintiff made with regard to physical impairments. Moreover, the notes Defendants kept on Plaintiff's claim state that her physical impairments (asthma, allergies, GERD, joint pain, and surgery to remove breast implants) "are stable and do not impact functionality." (AR II at 95.) Therefore, the reviews by Dr. Del Valle (dated April 21, 2009) and Dr. Kelley (dated May 14, 2008) are entirely useless as an aid to Defendants – or, for that matter, the Court – in determining Plaintiff's disability status based on her *mental* conditions. (*Id.* at 128-130, 259-268.) Dr. Del Valle specifically noted that "[t]here are no office notes from any treating PCP, pulmonologist, gastroenterologist or allergist to review pertaining to the time period under appeal review. There are no medical records to review from any non mental health providers for the time the claimant has been out of work" and stated that Plaintiff's mental health conditions were "beyond the scope of [her] expertise." (*Id.* at 129.) Dr. Kelley noted that Plaintiff's file "contains primarily notes regarding mental health treatment" and that "[t]here are no non-mental health treatment office visits submitted for review beyond 2001." (*Id.* at 259.)

Notwithstanding these unhelpful file reviews, Defendants also conducted two reviews of Plaintiff's file by consulting psychiatrists. Perhaps the Court's determination would have been different had these consulting psychiatrists adequately reviewed the totality of the evidence in the record and reached a reasonable conclusion; however, there

are serious flaws with these reports that prevent such an outcome.

The first such report was completed by Dr. Guinjoan in June 2008; the second by Dr. Busch on April 20, 2009. (AR II at 131-147, 242-246.) The primary conclusion from the file reviewers was that Plaintiff was not disabled as of January 16, 2006, largely due to one statement by a treating psychiatrist under whose care she had been for only four months at the time of the statement. (*Id.* at 301.) The Court acknowledges Dr. Larson's numerical findings with regard to Plaintiff's status during each visit, but as Magistrate Judge Carter noted, it is unclear what 7 or 8 out of 10 means because "[t]he 10 may represent the highest functioning level *anyone* could possibly achieve or it could represent the highest level that the plaintiff could achieve given her conditions." (R&R at 17.) Nonetheless, the consulting reviewers relied heavily on Dr. Larson's one statement and his numerical findings. Dr. Busch stated in his report that "[t]here was no indication of any loss of psychological function from 01/16/06 until Dr. Kilpatrick reported severe symptoms of depression on 03/29/08. . . . the clinical evidence in the file does not support functional psychiatric limitations, 01/16/06 and beyond, on a continuous basis that would have included any reduction of the ability of the Claimant to work on a full time basis until the Claimant was seen by Dr. Kilpatrick for independent psychological examination on 03/29/08." (AR II at 143.)

Reliance by the consultants and Defendants on this one isolated statement and status by numeric scale ignores other pertinent information from Dr. Larson's treating notes, starting with his diagnosis of major depression *recurrent*, in *partial* remission in September 2005; Plaintiff's statements that she was still suffering from anxiety in May 2006; Plaintiff's new diagnosis of obsessive-compulsive disorder in August 2006; and Dr.

Larson's notation that this was a diagnosis *in addition to* Plaintiff's depression, which still remained as a diagnosis throughout Plaintiff's treatment. (*Id.* at 293, 296-298, 300-305.) There is no indication that Plaintiff's diagnosis of major depression was ever satisfactorily treated, and there is support for the contention that Plaintiff's depression was difficult to treat, as Dr. Larson noted that Plaintiff had "failed trials of Effexor, Prozac, Paxil, Zoloft and Wellbutrin" and often changed her medication or dosages. (*Id.* at 300.)

This reliance also ignores notes from Plaintiff's sessions with Ms. Scott, which took place from July 2007 through February 2008 and indicate that Plaintiff was suffering from significant anxiety, intrusive fears, obsessive-compulsive habits, and was unable to leave the house. (AR II at 288-292.) Ms. Scott continually noted that Plaintiff's progress was "fair." (*Id.* at 289-290.) Moreover, it is clear that Defendants relied more heavily on Dr. Larson's isolated statement, because the decision ignores any possibility of a disabling mental condition between January 16, 2006 and the report following Dr. Kilpatrick's IME with Plaintiff in March 2008, in which Dr. Kilpatrick diagnosed Plaintiff with Major Depressive Disorder, recurrent and severe, Generalized Anxiety Disorder, Panic Disorder with Agoraphobia, Obsessive-compulsive Disorder, and Post-traumatic Stress Disorder, and stated that "it is not likely that her ability to sustain consistent work will change in the foreseeable future." (*Id.* at 310.)

Defendants would therefore have the Court believe that it is reasonable to decide that Plaintiff was disabled due to severe depression until January 16, 2006, suddenly improved on the basis of Dr. Larson's vague statement that she could likely do some kind of work, and then spiraled downward to severe depression again as of March 29, 2008. As stated above, this conclusion ignores a significant amount of evidence in the record and

is almost entirely based on one statement that Plaintiff "*likely* could do *some type* of work," even though the parameters of this vague statement were never tested by Defendants. (AR II at 301.) There is no doubt that this statement was a major factor in Defendants' decision, as the letter denying Plaintiff's appeal states that they "did not order an independent medical examination and we determined that one was not necessary since our determination that the medical information on file does not support continuing impairment is based in large part upon the findings of [Plaintiff's] own provider, Dr. Larson. Dr. Larson voices doubts regarding [Plaintiff's] inability to work, and opines that she could perform some kind of work." (*Id.* at 122.)

The Court cannot accept Defendants' argument that it conducted a reasonable review of Plaintiff's claim on remand. Defendants disregarded the Court's prior Order, which strongly suggested that Defendants obtain an IME, and relied solely on file-reviewing physicians. Defendants then accepted the consulting physicians' opinions that Plaintiff was not disabled as of January 16, 2006, a conclusion which was unreasonably reached by virtue of placing great weight on one statement in the medical record, to the exclusion of a significant amount of other evidence that was not adequately considered. Therefore, the Court agrees with Magistrate Judge Carter and concludes that Defendants' decision to terminate Plaintiff's benefits as of January 16, 2006 was arbitrary and capricious. Defendants' failure to obtain an independent IME is once again an extremely compelling factor in the Court's conclusion that Defendants' decision on remand was arbitrary and capricious.

Accordingly, the Court **OVERRULES** Defendants' objections as to Magistrate Judge Carter's application of the arbitrary and capricious standard, Magistrate Judge Carter's

review of the evidence, and Magistrate Judge Carter's determination that Defendants' decision on remand was arbitrary and capricious.

### B.     Burden of Proof

Defendants assert in their third objection that Magistrate Judge Carter improperly shifted the burden of proof to Defendants by requiring Defendants to provide evidence that would affirmatively prove that Plaintiff could work. (Defs.' Objs. at 21-22.) Defendants cite from Plan language regarding the substantiation of Plaintiff's disability and argue that Plaintiff was required to furnish evidence that she was unable to work at any occupation, and that Dr. Larson's statement was evidence that worked against that requirement. (*Id.* at 22.) Defendants further argue that Magistrate Judge Carter overlooked Defendants' efforts to have Plaintiff's file reviewed by four physicians and unsuccessful efforts to obtain more information about Plaintiff's condition by speaking with Dr. Larson. (*Id.*)

In her Response to Defendants' Objection, Plaintiff argues that Dr. Larson's comment "is a statement of uncertainty, not an assessment that [Plaintiff] is ready to return to work . . . . Dr. Larson's statement is simply too vague, too uncertain to be evidence to reasonably support a conclusion that [Plaintiff's] disability ceased as of that date." (Court Doc. 56, Pl.'s Resp. to Defs.' Objs. at 11-12.)

Magistrate Judge Carter noted that Defendants' decision was based, in large part, on Dr. Larson's finding that, as reproduced from the denial letter, "[Plaintiff] could perform some kind of work." (R&R at 15; AR II at 122.) Magistrate Judge Carter found that Defendants' conclusion that Plaintiff could work was "plain wrong" because "Dr. Larson did *not* affirmatively conclude that the plaintiff could work. Instead, he expressed doubts about

the plaintiff's disability and stated, "[s]he *likely* could do some type of work." (R&R at 15-16.) Magistrate Judge Carter found that this statement raised questions about Plaintiff's abilities, but did not resolve them, and that the statement was insufficient to support Defendants' decision. (*Id.* at 16.)

The Court agrees. The Plan language to which Defendants refer states that "you are considered totally disabled if you remain under the regular care of a licensed practicing physician and you are unable to work at any job for which you might be qualified based on your education, training and experience. In order to continue receiving benefits, you must furnish periodic medical evidence of your illness or injury if requested by the Company." (Plan at 123.) Defendants' reliance on one statement offering the vague idea that Plaintiff might be able to work is unreasonable and, by reaching this conclusion, Magistrate Judge Carter was not requiring Defendants to affirmatively prove that Plaintiff could work. Instead, the Court interprets Magistrate Judge Carter's finding in this regard as an indication that the Plan language does not give Defendants license to determine that Plaintiff is ineligible for benefits on the basis of one statement, without a thorough review of the medical record – particularly when this statement, as Magistrate Judge Carter and Plaintiff noted, does not provide any definitive answers (or a definite conclusion that Plaintiff is not disabled) and instead only raises questions.

Moreover, the Court cannot identify any fault with Magistrate Judge Carter's finding that it was improper for Defendants to conduct only file reviews and later list tests Plaintiff *should* have obtained to substantiate her disability. (R&R at 17.) In the letter denying her benefits on remand, Defendants explained:

> The Independent Consulting Neuropsychiatrist opined that,

> from an objective standpoint, based on the conditions that the [sic] you allege you suffer, ***it would have been anticipated that the treating providers would have conducted additional testing, for evaluation and treatment, and these could have impacted our claim decision.*** These include a structured interview, mental status exam, personality testing (Minnesota Multiphasic Personality Inventory 2 (MMPI 2), Personality Assessment Inventory (PAI) or Millon Clinical Multiaxial Inventory III (MCMI 3), cognitive screening (Repeatable Battery for the Assessment of Neuropsychological Status (RBANS) or Trail making test) and validity testing (Test of Memory Malingering (TOMM) or Rey's 15 item testing). ***As you know, under the Plan, medical evidence must be submitted to MetLife substantiating the existence and the continuation of a totally disabling condition as defined by the Plan.***

(AR II at 188 (emphasis added).) Based on this language, the Court cannot credit Defendants' assertion that referral to file-reviewing physicians and their attempts to contact Dr. Larson about the January 2006 treatment note were parts of the decision-making process that Magistrate Judge Carter erroneously overlooked. The Court does not find any such error in Magistrate Judge Carter's review. The Court has already explained at length its adoption of Magistrate Judge Carter's conclusions as to Defendants' reviews of Plaintiff's file and, in light of Defendants' very specific language in the denial letter, the Court finds that Defendants' attempts to contact Dr. Larson about this statement, which essentially formed the basis for Defendants' denial of benefits, did not constitute a good faith effort to request information to substantiate Plaintiff's disability.

Furthermore, Magistrate Judge Carter did not shift the burden of proof to Defendants because the Plan language specifies that Plaintiff is to provide evidence of her disability *"if requested by the Company."* (Plan at 123 (emphasis added).) In its first decision in the instant case, the Court strongly faulted Defendants for not obtaining an

independent IME but simultaneously claiming they lacked certain test results and information that would substantiate Plaintiff's disability. As the Court noted in its prior Order – citing to this same Plan language:

> There is no burden on Satterwhite to proactively prove her disability on a continuing basis. If MetLife felt that it needed [more information], it had the right and obligation to request such information from Satterwhite. MetLife cannot shift its burden to Satterwhite and argue that she failed to provide adequate information to support her disability claim. It was therefore unreasonable for MetLife to rely on a supposed lack of information to revoke Satterwhite's disability benefits.

(Court Doc. 20, Mem. and Order at 13-14.)

The Court is, once again, faced with a very similar set of circumstances, in which Defendants claim that the absence of specific tests from Plaintiff's medical record militated – at least in part – in favor of the denial of Plaintiff's claim on remand. Defendants referred in the denial letter to specific tests Plaintiff's physicians should have obtained, and claimed that the results of such tests could have impacted the decision. Therefore, on remand, Defendants again improperly shifted the burden of proof to Plaintiff by neglecting to request that she undergo specific testing while using her failure to obtain such testing as a basis for the denial of benefits. In essence, Defendants were requiring that Plaintiff substantiate her disability by means not outlined or requested in any documentation until her benefits had already been denied. The Court therefore concludes that Defendants failed to undertake a full and fair review of Plaintiff's claim on remand and again concludes that the decision to deny benefits on remand was arbitrary and capricious.

The Court further agrees with Magistrate Judge Carter's recommendation that Plaintiff be awarded benefits. It is now abundantly clear that Defendants will disregard any

further guidance or instruction from the Court, and the Court sees no legitimate reason to remand the case a second time, only to parrot itself once again when Defendants make the same improper and unreasonable decisions. In addition, as Magistrate Judge Carter wisely notes, there is no testing that Plaintiff could undergo now that would be acceptable to Defendants as a means of substantiating Plaintiff's disability as of January 17, 2006.

Accordingly, the Court will reinstate Plaintiff's benefits as of January 17, 2006. Although Plaintiff has also requested interest on her past due benefits and attorneys fees, the Court will reserve ruling on both these requests.

The Court takes note of the case of *Ford v. Uniroyal Pension Plan*, 154 F.3d 613 (6th Cir. 1998) in which the United States Court of Appeals for the Sixth Circuit stated that "[a]lthough ERISA does not mandate the award of prejudgment interest to prevailing plan participants, we have long recognized that the district court may do so at its discretion in accordance with general equitable principles." *Id.* at 616 (citations omitted). As such, Plaintiff is invited to brief the issue of prejudgment interest on past due benefits, and the Court will delay entering a Judgment in this case until briefing is complete and a ruling can be made. If Plaintiff desires to brief this issue, her brief will be due **14 days** from the date of this Order, and Defendants may file a responsive brief within **7 days** after the submission of Plaintiff's brief. In her brief, Plaintiff should include pertinent facts that might warrant the award of prejudgment interest, citations to authority, a proposed interest rate, and calculations based on the proposed rate.

### IV. CONCLUSION

Based on the above, the Court **ORDERS** the following:

- Magistrate Judge Carter's Report and Recommendation [Court Doc. 53] is **ACCEPTED AND ADOPTED** in its entirety;

- Defendants' Objections [Court Doc. 55] to Magistrate Judge Carter's Report and Recommendation are **OVERRULED**;

- Plaintiff's Second Motion for Judgment on the Pleadings [Court Doc. 44] is **GRANTED**;

- Defendants' decision to terminate Plaintiff's LTD benefits is **REVERSED**;

- Plaintiff shall be awarded LTD benefits under the Plan, including past due benefits, and such benefits shall be **REINSTATED** as of January 17, 2006;

- The Court **RESERVES RULING** on Plaintiff's requests for interest on her past due benefits and attorneys fees; however,

- Plaintiff may file a brief arguing in favor of an award of prejudgment interest on her past due benefits within **14 days** of the date of this Order, and Defendants may file a responsive brief within **7 days** after the submission of Plaintiff's brief. Plaintiff's brief should include pertinent facts that might warrant the award of prejudgment interest, citations to authority, a proposed interest rate, and calculations based on the proposed rate.

**SO ORDERED** this 22nd day of March, 2011.

/s/Harry S. Mattice, Jr.
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE